UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DENNIS CHRISTENSEN,

        Plaintiff,

v.

        Case No. 3:22-cv-976-MMH-JBT

FDOC WARDEN T. BOWDEN,
et al.,

        Defendants.

## ORDER

**I.   Status**

Plaintiff Dennis Christensen, an inmate in the Florida Department of Corrections (FDOC), initiated this action on August 31, 2022 (mailbox rule), by filing a pro se Civil Rights Complaint (Doc. 1; Complaint). Christensen is proceeding as a pauper (Doc. 6). After reviewing his Complaint, the Court directed him to amend his claims (Doc. 7). Christensen complied. See Plaintiff's Amended Complaint (Doc. 8; Amended Complaint or AC).

Before the Court is Defendants' Motion to Dismiss the Amended Complaint (Doc. 16; Motion). Christensen filed a Response to State's Motion for Dismissal (Doc. 17; Response). The Motion is ripe for review.

## II. Christensen's Allegations

In the Amended Complaint, Christensen names as Defendants the following individuals at Lawtey Correctional Institution: Warden T. Bowden, Warden C. Underhill, Sergeant Rouselle, Sergeant Chapman, Sergeant Hayes, and Lieutenant B. King. Christensen alleges that Defendants violated his rights under the First Amendment Free Exercise Clause, the Religious Land Use and Institutionalized Persons Act (RLUIPA), the Religious Freedom Restoration Act (RFRA), "the KKK Act," and the Fourteenth Amendment. According to Christensen, he requested to eat his Passover meals in his dormitory, but his requests were denied even though Muslim inmates are permitted to eat their Ramadan meals in their dormitories. Specifically, Christensen alleges that in 2021, the "Food Service Director" at Gainesville Work Camp "lied and stated 'no one . . . had signed up for Passover.'" AC at 10.[1] Christensen filed grievances regarding this issue, but the Bureau of Inmate Grievance Appeals "commit[ted] perjury" when it rejected his grievance. Id. at 10-11.

According to Christensen, in 2022 his "religious practices for [the] week of Passover were halted by" Defendant Rouselle. Id. at 11. Christensen

---

[1] Christensen alleges that the Gainesville Workcamp was "under control of Lawtey" Correctional Institution. AC at 6.

explains that when he attempted to leave the chow hall "with the balance of feast articles to compliment the unleavened bread which FDOC had supplied [inmates] with earlier in the week," Defendant Rouselle told him he "could eat it there or throw it away." Id. at 8. Christensen contends that "[w]e were then informed for future meals we could bring the unleavened bread back into the chow hall and eat there." Id. at 8. According to Christensen, however, "[t]his defeats the main thrust of Passover Feast which is being separated from leaven products." Id. at 8-9. Christensen asserts that Defendants Chapman and Hayes "refused their affirmative duties by virtue of their oath[]s to stop the infringement of prisoner's retained religious rights as did the Wardens of FDOC." Id. at 11; see id. at 9 ("[Defendants] Hayes and Chapman took action of affirming [Defendant] Rouselle's illegal action of interference halting my religious activity[;] this went on for the week of their schedule."). As to the remaining Defendants, Christensen alleges that Bowden, Underhill, and King participated in the violation of his rights by denying his grievances and/or by failing to take corrective action in response to his grievances. See AC at 6-8 (referring to Doc. 8-1 at 2-7).

As relief, Christensen seeks injunctive relief forcing the prison to allow Christians to eat their Passover meals in the dorms, actual damages of $450 for the filing fee,[2] and punitive damages in the amount of $200,000. Id. at 10.

### III. Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual

---

[2] The Court granted Christensen's request to proceed as a pauper and assessed against him the $350 filing fee. See Order (Doc. 6).

content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." Iqbal, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" Id. at 678 (quoting Twombly, 550 U.S. at 570).

**IV. Analysis**

Defendants argue the Amended Complaint should be dismissed because (1) the statute of limitations expired as to Christensen's claims from 2021; (2) "Plaintiff Seeks Prospective Injunctive Relief"; (3) Christensen fails to state a

claim against Defendants Bowden, King, and Underhill; and (4) Defendants are entitled to Eleventh Amendment immunity to the extent they are sued in their official capacities for monetary damages. In response, Christensen argues that "Rouselle, Chapman, Hayes, [and] King . . . were vocally informed on the days of their illegal actions, yet with casual indifference, failed to correct or adjust their unconstitutional behavior." Response at 2. He contends that the "[p]olicy of FDOC is to hinder and abridge religious freedom of Christians," and the supervisory Defendants are liable for "failing to adequately discharge their supervisory duties." Id. at 3. He further asserts that punitive damages are proper to correct a violation of his constitutional rights. Id. at 4.

Each of Defendants' arguments is addressed in turn.

    a. Statute of Limitations

Defendants argue that Christensen's claims between March 29, 2021 and April 3, 2021, while he was housed at Gainesville Workcamp should be dismissed based on the one-year statute of limitations set forth in Florida Statute 95.11(5)(g) (imposing a one-year statute of limitations for "an action brought by or on behalf of a prisoner . . . relating to the conditions of the prisoner's confinement"). The Court need not decide the issue. While Christensen makes allegations against the Food Service Director and the Bureau of Inmate Grievance Appeals for actions that occurred in 2021, he has

6

not named any such individuals as Defendants. Nor has he connected his allegations relating to what occurred at the Gainesville Workcamp to any Defendant. Thus, the Court considers those allegations simply as background information. Defendants' Motion in this regard is due to be denied as moot.

      b. <u>Prospective Injunctive Relief</u>

In the Motion, under the heading "Plaintiff Seeks Prospective Injunctive Relief," Defendants include some case law but fail to apply it to Christensen's claims or otherwise explain their argument. Thus, the Court declines to guess what Defendants intended to argue here and this portion of their Motion is due to be denied.

      c. <u>Supervisory Liability – Defendants Bowden, King, and Underhill</u>

Defendants next argue that the claims against Bowden, King, and Underhill should be dismissed because Christensen attempts to hold them liable based on their supervisory positions. Christensen attaches to his Amended Complaint his pertinent grievances and the responses thereto from Bowden, King, and Underhill.

On April 15, 2022, Christensen submitted an informal grievance stating that Rousselle, Hayes, and Chapman violated his rights under RLUIPA by forcing him to consume his "Passover feast" in the chow hall instead of allowing

him to return to his dorm with the food like inmates of the Muslim faith are permitted to do. Doc. 8-1 at 7. On April 20, 2022, Defendant King responded:

> Passover meals are served in the dining hall. There is no need for the meals to be removed from the area. Inmates participating in Ramadan are required to fast during day light hours and cannot break their fast prior to the sunset prayer. The sunset prayer does not occur until after the dining hall is closed thus they receive other bag meals to be consumed after prayer. Your informal grievance is being denied.

Id. Christensen proceeded with filing a formal grievance regarding this issue.

Id. at 5-6. Defendant Underhill denied his formal grievance:

> In accordance with the below listed directive you will not be allowed to eat your meal in the dormitory.
> 2022 Passover Information and Files
> Supplemental Instructions – CFO 2021-2022
> Meal Service
> a. Inmates will not have dedicated areas or dining tables for eating CFO meals. Dining tables and serving lines are not required to be wrapped with Clear Food Wrap prior to inmates being served or eating CFO meals.
> b. Inmates will not be segregated into separate dining halls at meal times.

Id. at 4. Finally, Christensen submitted a grievance appeal, id. at 3, which Defendant Bowden likewise denied stating: "According to Procedure 503.06 and the 2022 Passover Information and Files Supplemental Instructions, there is no requirement that the institution serve the two meal plans at separate times. The institution is conforming with Procedure 503.006 and the 2022

8

Passover Information and Files Supplemental Instructions." Id. at 2.

"Supervisory officials are not vicariously liable under section 1983 for the unconstitutional acts of their subordinates." Ingram v. Kubik, 30 F.4th 1241, 1254 (11th Cir. 2022); see Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003). Indeed, "[s]upervisory officials cannot be held vicariously liable under section 1983 for the actions of their subordinates unless the supervisor 'personally participates in the alleged unconstitutional conduct' or 'there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation.'" Smith v. Deal, 760 F. App'x 972, 975 (11th Cir. 2019)[3] (quoting Cottone, 326 F.3d at 1360).

> There are three ways to establish a causal connection between a supervisor's actions and the unlawful conduct: 1) "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so"; 2) "when a supervisor's custom or policy results in deliberate indifference to constitutional rights"; or 3) "when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone, 326 F.3d at 1360 (citations and quotations omitted). "The deprivations that constitute widespread abuse sufficient to notify

---

[3] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060-61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

> the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (quotations omitted). This "standard by which a supervisor is held liable in his individual capacity for the actions of a subordinate is extremely rigorous." Keith v. DeKalb Cnty., Ga., 749 F.3d 1034, 1048 (11th Cir. 2014).

Dickinson v. Cochran, 833 F. App'x 268, 272 (11th Cir. 2020). Defendants Bowden, King, and Underhill did not personally forbid Christensen from taking food from the dining hall to his dorm during the week of Passover. Instead, Christensen alleges that Bowden, King, and Underhill approved and/or failed to correct their subordinates' alleged unconstitutional actions by denying Christensen's grievances. However, not addressing a grievance in the manner a prisoner would like, without more, does not render an individual liable for the underlying constitutional violation. See Jones v. Eckloff, No. 2:12-cv-375-FtM-29DNF, 2013 WL 6231181, at *4 (M.D. Fla. Dec. 2, 2013) (unpublished) ("[F]iling a grievance with a supervisory person does not automatically make the supervisor liable for the allegedly unconstitutional conduct brought to light by the grievance, even when the grievance is denied." (collecting cases)).

There are circumstances in which a defendant's failure to act in response to an inmate's grievances may result in a constitutional violation. See Goebert

v. Lee Cnty., 510 F.3d 1312, 1327-29 (11th Cir. 2007) (finding that a defendant's lack of action in response to an inmate's written complaint amounted to deliberate indifference and the delay attributable to the defendant's deliberate indifference may have caused the inmate's injury). In Goebert, a pregnant pretrial detainee submitted a medical complaint form, wherein she requested to see an obstetrician or a doctor outside of the county jail. 510 F.3d at 1318. The plaintiff alleged in her complaint that she had leaked amniotic fluid for approximately nine days, she had not felt any movements from her baby, and she had a history of miscarriages. Id. The defendant, a facility commander, responded that medical could arrange an appointment at her expense, despite the plaintiff noting in her complaint that medical staff had "ignored her daily requests for aid and had already failed to set up an appointment for her with an outside obstetrician." Id. at 1328. In finding that the defendant was not entitled to summary judgment, the Eleventh Circuit noted that the inmate's written complaint contained sufficient information to provide the defendant with subjective knowledge of her serious medical need, and his failure to take action in response to her complaint because he did not believe her amounted to deliberate indifference. Id. at 1327-28.

But the facts of this case are distinguishable from those in Goebert. The defendant in Goebert completely disregarded his duty to investigate the inmate's "self-evident" and time-sensitive serious medical complaints because he "automatically disbelieve[d] all inmate statements about medical care." Id. at 1328, 1329. Here, Underhill, King, and Bowden each considered and addressed Christensen's complaints by referring to the FDOC's policy on Passover meals. Thus, even taking Christensen's allegations as true, he has failed to sufficiently allege a causal connection between Underhill's, King's, and Bowden's grievance responses and the alleged constitutional violation.

Moreover, inmates have "no constitutionally protected liberty interest in access to the prison's grievance procedure." Moore v. McLaughlin, 569 F. App'x 656, 659 (11th Cir. 2014) (citing Bingham, 654 F.3d at 1177; Grayden v. Rhodes, 345 F.3d 1225, 1232 (11th Cir. 2003)); see Charriez v. Sec'y, Fla. Dep't of Corr., 596 F. App'x 890, 895 (11th Cir. 2015) (finding the district court did not err in dismissing the plaintiff's claim that the defendants "had violated his constitutional due-process rights by failing to take corrective action during the appeal of the suspension of his visitation privileges[ b]ecause the prison grievance procedure does not create a protected liberty interest"); Mathews v. Moss, 506 F. App'x 981, 984 (11th Cir. 2013) (finding the plaintiff failed to state a claim because he merely "alleged that his prison grievances were either

ignored or wrongly decided or that prison officials did not properly follow the prison's own grievance procedures"). Thus, to the extent Christensen alleges that Bowden, King, or Underhill denied him due process in the grievance procedure, such allegations fail to state a claim. As such, Defendants' Motion is due to be granted to the extent they seek dismissal of the claims against Defendants Bowden, King, and Underhill.

### d. Eleventh Amendment Immunity

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. It is well-settled that, in the absence of consent, "a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." Papasan v. Allain, 478 U.S. 265, 276 (1986) (quotation omitted). The Eleventh Amendment also prohibits suits against state officials where the state is the real party in interest, such that a plaintiff could not sue to have a state officer pay funds directly from the state treasury for the wrongful acts of the state. Summit Med. Assocs., P.C. v. Pryor, 180 F.3d 1326, 1336 (11th Cir. 1999).

13

In <u>Zatler v. Wainwright</u>, 802 F.2d 397, 400 (11th Cir. 1986) (internal quotations modified), the Eleventh Circuit noted:

> It is clear that Congress did not intend to abrogate a state's eleventh amendment immunity in section 1983 damage suits. <u>Quern v. Jordan</u>, 440 U.S. 332, 340-45 (1979). Furthermore, after reviewing specific provisions of the Florida statutes, we recently concluded that Florida's limited waiver of sovereign immunity was not intended to encompass section 1983 suits for damages. <u>See</u> <u>Gamble v. Fla. Dep't of Health & Rehab. Serv.</u>, 779 F.2d 1509, 1513-20 (11th Cir. 1986).

Accordingly, in <u>Zatler</u>, the court found that the FDOC Secretary was immune from suit in his official capacity. <u>Id.</u> Thus, insofar as Christensen seeks monetary damages from Defendants in their official capacities, the Eleventh Amendment bars suit. The Motion is due to be granted to the extent that Christensen requests monetary damages from Defendants in their official capacities.

Accordingly, it is

**ORDERED**:

1. Defendants' Motion to Dismiss the Amended Complaint (Doc. 16) is **GRANTED in part and DENIED in part**:

    a. The Motion is **GRANTED to the extent** that all claims against Defendants Bowden, Underhill, and King and all

14

     claims for monetary damages against Defendants in their official capacities are **DISMISSED WITHOUT PREJUDICE**.

  b. The Motion is **DENIED as moot** to the extent it seeks dismissal of some claims based on the one-year statute of limitations.

  c. The Motion is **DENIED** to the extent it seeks dismissal of Christensen's request for injunctive relief.

2. The **Clerk of Court** shall terminate Defendants Bowden, Underhill, and King as parties to this case.

3. Defendants Rouselle, Chapman, and Hayes shall file an answer by **January 25, 2024**.

4. A separate Order will enter setting case management deadlines.

**DONE AND ORDERED** at Jacksonville, Florida, this 3rd day of January, 2024.

*[signature]*

MARCIA MORALES HOWARD
United States District Judge

JAX-3 1/2
c:
Dennis Christensen, #150454
Counsel of Record

15